HAWTHORNE, Justice.
 

 Bel Oil Corporation and Calcasieu Paper Company, Inc., both Louisiana corporations, instituted this suit against the Collector of Revenue, State of Louisiana, to recover Louisiana severance taxes of $5372.64 paid under protest for December, 1958, and to be reimbursed for all other such taxes paid in the future during the pendency of this suit.
 
 [1]
 
 The suit was dismissed on exception of no cause and no right of action, and plaintiffs have appealed.
 

 Article 10, Section 21, of the Louisiana Constitution of 1921 provides:
 

 “Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance * * *. Such natural resources may be classified for the purpose of taxation and such taxes may be predicated upon either the quantity or value ■of the products at the time and place of severance. * * * ”
 

 Under the authority of this constitutional provision the Legislature of this state enacted R.S. 47:631 et seq., which, so far as pertinent to the issues here presented, read :
 

 “§ 631. Imposition of tax
 

 “Taxes as authorized by Section 21 of Article X of the Constitution of Louisiana, are hereby levied upon all natural resources severed from the soil or water, including all forms of timber, including pulp woods, and turpentine and other forest products; minerals such as oil, gas, natural gasoline, distillate, condensate, casinghead gasoline, sulphur, salt, coal, lignite and ores; also marble, stone, gravel, sand, shells and other natural deposits; and the salt content in brine.
 

 “§ 632. Taxes payable by owners; lien and privilege created
 

 “These taxes shall be paid by the owner or proportionately by the owners thereof at the time of the severance and become due and exigible quarterly, as herein provided * * *.
 

 "§ 633. Rates of tax
 

 “The taxes on natural resources severed from the soil or water, levied by R.S. 47 :- 631 shall be predicated on the quantity severed and shall be paid at the following rates:
 

 % íjí ijc j{c
 

 “(9) On gas, two and three-tenths cents
 
 (2.3‡)
 
 per thousand cubic feet * * *.
 

 “§ 634. Definitions
 

 “The following terms as used in this Part shall have the following meanings ascribed to them:
 

 
 *503
 
 “(1) ‘Owner’ means owner at the time of severance.
 

 * * * * * *
 

 “(3) ‘Severed’ means the point at which the natural resources are severed from the surface of the earth or water.”
 

 Plaintiffs in their petition pray for judgment against the collector decreeing:
 

 “(a) That the severance tax act, * * insofar as it applies to that portion of the gas produced by Bel, commingled with other gas sold and delivered to interstate commerce pipeline companies, and which goes into the pipeline of Calcasieu Paper Company, Inc., is violative of the commerce clause (Subdivision 3 of Section 8 of Article 1) of the Constitution of the United States.
 

 “(b) That the severance tax act is violative of the Louisiana Constitution, particularly Article 10, Section 1, thereof, and the due process clause of the Fourteenth Amendment to the Constitution of the United States and the due process clause of the Louisiana Constitution, in that it is discriminatory and non-uniform as applied to Calcasieu’s operations.”
 

 They further pray for judgment for the amount of the tax paid under protest and for reimbursement of all other sums paid in the future during the pendency of the suit.
 
 [2]
 

 The pertinent facts alleged in the petition are these: Plaintiff Bel Oil Corporation is-a natural gas company under the provisions of the federal Natural Gas Act and holds a certificate of public convenience and necessity issued to it by the Federal Power Commission with respect to gas produced, sold to others for transportation, and transported by it in interstate commerce for sale in other states. Bel owns the entire interest in certain producing gas wells in Allen Parish, Louisiana. Some of the gas being produced from these wells is sold by Bel to United Gas Corporation, Transcontinental Gas Lines, and Texas Gas Transmission Corporation, all of which purchase, transport, and sell in interstate commerce the gas purchased from Bel. Other gas produced by Bel from its wells is sold by it to the other plaintiff, Calcasieu Paper Company, Inc.; and the gas sold to Calcasieu, is transported by Calcasieu through a 30-mile pipeline to its paper manufacturing plant at Elizabeth, Allen Parish, Louisiana,, and there used by Calcasieu for fuel and in other operations incidental to its paper manufacturing business. Bel transports the-gas, after its severance at or near the wellhead, through its pipeline system to its-plant (gasoline plant), where the gas enters-
 
 *505
 
 a header or manifold in which all of the gas produced by Bel is commingled. At Bel’s plant the gas is dehydrated, and foreign matters are extracted as well as other chemicals such as protane, butane distillate, etc. After being so processed in the Bel plant the gas is delivered to the various purchasers after passing through a meter into their respective pipelines, including the pipeline owned by Calcasieu Paper Company. The gas sold to these purchasers, three of which are interstate gas carriers, moves in a continuous flow from the wellhead through Bel’s plant into the several pipelines of the purchasers, and the greater portion of the gas flowing into the pipelines is passed into other states and sold in interstate commerce.
 

 In the petition it is alleged that the severance tax here involved was paid by Bel to the collector under protest. It is further alleged that Calcasieu Paper Company entered into a contract to buy gas from Bel at its plant and transport it through Calcasieu’s own pipeline to its paper plant in Louisiana some 30 miles away for use as fuel; that in this contract Calcasieu agreed to pay all severance and other taxes which at any time might be assessed against the gas produced by Bel and sold to Calcasieu; that Bel has been reimbursed by Calcasieu for the taxes so paid, and that accordingly these taxes were indirectly but actually paid by Calcasieu.
 

 From the allegations of fact and the prayer of the petition it will be seen that the basis of plaintiffs’ suit to recover the gas severance tax paid under protest is that the act imposing the tax is unconstitutional. Their first argument is that the severance tax imposed by the act is violative of the Commerce Clause (Clause 3, Section 8, Article 1) of the Constitution of the United States.
 

 Plaintiffs argue that under the language of the act the incidence of the severance tax here involved is on the owner at the point of severance after the gas is severed; that the tax remains on the gas from the point of severance as it passes through Bel’s processing plant and is delivered to the purchasers after passing through a meter into their respective pipelines; that three of these purchasers are interstate pipeline companies engaged in the transportation of gas for resale in other states; that all of the gas produced by Bel is commingled in its processing plant and loses its identity, and that approximately two-thirds of this gas is sold by Bel for resale in interstate commerce. Under this argument they contend that the severance tax is not a local tax but a burden on interstate commerce.
 

 The answer to plaintiffs’ argument is that the severance tax here involved is not on the gas itself and is not a property tax or a tax on the ownership of the gas, but, as stated by this court in Gulf
 
 *507
 
 Refining Co. of Louisiana v. McFarland, 154 La. 251, 97 So. 433; 264 U.S. 573, 44 S.Ct. 402, 68 L.Ed. 856, is “an excise tax, imposed upon the right to produce or sever the products from the land”. In that case we said: “A severance tax, even though it is measured by the value of the property severed, is not a property tax; it is an excise tax upon the privilege of severing; just as an inheritance tax, even though measured by the value of the property inherited, is not a property tax, but an excise tax on the right of inheriting.” See also Bel Oil Corporation v. Fontenot, 238 La. 1002, 117 So.2d 571. As such, the tax is imposed at the moment of severance and not thereafter.
 

 According to the trial judge’s view, with which we agree, the cases of Oliver Iron Mining Co. v. Lord, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929; Hope Natural Gas Co. v. Hall, 274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049; and Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038, are decisive and controlling, and refute plaintiffs’ contention that the severance tax here involved is a burden on interstate commerce. To these decisions we add the case of State of Alaska v. Arctic Maid, decided by the United States Supreme Court in May, 1961, 366 U.S. 199, 81 S.Ct. 929, 6 L.Ed.2d 227.
 

 In Oliver Iron Mining Co. v. Lord, supra, Minnesota imposed on all those engaged in the business of mining or producing iron ore as owners or lessees within the state an occupation tax equal to 6 per cent of the value of the ore mined or produced during the year. Oliver Iron Mining Company brought suit to prevent imposition of the tax, alleging that it violated the Commerce Clause of the federal Constitution and the Equal Protection Clause of the Fourteenth Amendment of that Constitution. The United States Supreme Court characterized the tax as an occupation tax laid on the business of mining ore, “which consists in severing it from its natural bed and bringing it to the surface where it can become an article of commerce”. The court explained that practically all of Oliver Iron’s output was mined to fill contracts with consumers outside Minnesota “and passes at once into the channels of interstate commerce”, being loaded onto railroad cars for interstate transportation as it emerges from the mine, and that this state of facts formed the basis of Oliver Iron’s contention that the Minnesota tax violated the Commerce Clause of the federal Constitution by burdening interstate commerce. The United States Supreme Court rejected this view of the matter, saying:
 

 “Plainly the facts do not support the contention. Mining is not interstate commerce, but, like manufacturing, is a local business, subject to local regulation and taxation. * * * Its character in this regard is intrinsic, is not affected by the intended use
 
 *509
 
 or disposal of the product, is not controlled by contractual engagements, and persists even though the business be conducted in close connection with interstate commerce. * * *
 

 “The ore does not enter interstate commerce until after the mining is done, and the tax is imposed only in respect of the mining. No discrimination against interstate commerce is involved. The tax may indirectly and incidentally affect such commerce, just as any taxation of railroad and telegraph lines does, but this is not a forbidden burden or interference.”
 

 Hope Natural Gas Company v. Hall, supra, involved a West Virginia privilege tax on persons engaged in the business of mining and producing various natural resources, among them natural gas, the amount of the tax to be equal to the value of the article as shown by the gross proceeds derived from its sale by the producer multiplied by, for natural gas, one and seventeen-twentieths of one per cent. Counsel for the gas company conceded that without violating the Commerce Clause a state may levy a privilege or occupation tax upon producers of natural gas reckoned according to the value of that commodity at the well, but argued that the tax under attack was laid on gross receipts derived from interstate commerce. The state court decree in the case required that the tax be computed upon the value of the gas at the well, and the United States Supreme Court held that as so computed the tax was valid.
 

 Utah Power & Light Co. v. Pfost, supra, concerned an Idaho license tax of one-half mill per kilowatt hour on the manufacture, generation, or production within the state, for sale, of electricity and electrical energy. Utah Power & Light was a public utility engaged in generating electric power in Idaho and transmitting that power to consumers in Utah. It attacked the tax in question on the basis, inter alia, that it imposed a direct burden on interstate commerce in violation of Clause 3, Section 8, Article 1, of the federal Constitution and denied petitioner the equal protection of the laws and deprived it of property without due process of law in violation of the Fourteenth Amendment. The public utility argued that the generation and transmission of electricity are inseparable and that hence both generation and transmission are interstate commerce. In concluding that the Idaho tax did not burden interstate commerce the United States Supreme Court distinguished conversion of the mechanical energy of falling water into electrical energy and transmission of that electrical energy to out-of-state consumers, and found that while conversion and transmission were substantially instantaneous, they were nevertheless essentially separable and distinct operations. The Oliver Iron and Hope Natural Gas cases, both supra, were relied on as controlling on the question of the
 
 *511
 
 validity of the Idaho license tax on the generation within the state of electricity.
 

 State of Alaska v. Arctic Maid, supra, involved the validity of an Alaskan tax of 4 per cent of the value of salmon, etc., caught in the waters off the coast of Alaska and shipped interstate. The court held that Oliver Iron Mining, along with another case, was dispositive of the controversy. The court said:
 

 “The Oliver Iron case is indeed a first cousin of the present case. Here, as there, the tax is an occupation tax. Here, as there, the market for the product obtained locally is interstate, the taking being a step in a process leading to an interstate market. In both the local product is promptly loaded for interstate shipment. But in each there is a preliminary local business being conducted' — an occupation made up of a series of local activities which the State can constitutionally reach.”
 

 The tax here is on the right to sever or produce the gas and is imposed at the moment of severance, before its taking into interstate commerce. The right to sever or produce gas from the soil of this state cannot in any sense be considered interstate commerce, but is a local right subject to state taxation. To paraphrase what was said in Oliver Iron Mining Co. v. Lord, supra, the gas does not enter into interstate commerce until after it is severed or produced from the soil, and the tax is imposed only in respect of the right of severing or producing; the tax may indirectly and incidently affect such commerce, just as taxation of railroad and telegraph lines does, but this is not a forbidden burden or interference.
 

 After severance or production the gas may go into interstate commerce, but the severance and the transmission in interstate commerce are separate and distinct operations, and the tax here involved is imposed before the transmission into interstate commerce has begun. That taxation by the state of the right to produce or sever is a local activity separate from the transmission in interstate commerce, is made clear and evident by the fact that no other state into or through which the gas may flow can legally impose a tax on the right to sever the gas from the soil of Louisiana.
 

 Plaintiffs argue that since Bel is a natural gas company within the meaning of the Natural Gas Act (15 U.S.C.A. § 717 et seq.) adopted by the United States Congress, and since after Bel’s gas leaves the wellhead or “at the point of severance where such gas starts into interstate commerce”, Bel’s operations are subject to the exclusive control of, and are regulated by, the Federal Power Commission, the severance tax is not a local tax but is a burden on interstate commerce. In support of this argument plaintiffs cite and rely on Michigan-Wisconsin Pipe Line Co. v. Calvert,
 
 *513
 
 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583; Louisiana-Nevada Transit Co. v. Fontenot, 233 La. 600, 97 So.2d 409; United Fuel Gas Co. v Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234; Eureka Pipe Line Co. v. Hallanan, 257 U.S. 265, 42 S.Ct. 101, 66 L. Ed. 227; Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035; Deep South Oil Co. of Texas v. Federal Power Comm., 5 Cir., 247 F. 2d 882; Shell Oil Co. v. Federal Power Comm., 5 Cir., 247 F.2d 900; Humble Oil & Refining Co. v. Federal Power Comm., 5 Cir., 247 F.2d 903; and Saturn Oil & Gas Co. v. Federal Power Comm., 10 Cir., 250 F.2d 61. These cases, however, are inapposite in the instant proceeding. The Michigan-Wisconsin, Louisiana-N evada, and two Hallanan cases involve state taxes that burdened interstate commerce, either because the state had delayed the incidence of the tax beyond the step where production and processing had ceased and transmission in interstate commerce had begun, as in the Michigan-Wisconsin and Louisiana-Nevada cases, or because the state had attempted to tax the transportation of oil and gas moving in interstate commerce, as in the two Hallanan cases. The Phillips Petroleum, Deep South, Shell Oil, Humble Oil, and Saturn Oil cases concern the status of petitioners therein as natural gas companies within the meaning of the Natural Gas Act and the resulting regulation by the Federal Power Commission of petitioners’ sales of natural gas destined for interstate commerce. Not one of these cases is authority for the proposition that the state cannot impose a severance or production tax on the right to sever or produce gas imposed at the moment of severance and before its taking into interstate commerce, the right taxed and transmission in interstate commerce being separate and distinct operations.
 

 Plaintiffs’ next contention is that the severance tax act is violative of .Article 10, Section 1, of the Louisiana Constitution and the Due Process clauses of the state and federal Constitutions. Counsel argue that R.S. 47:633 as amended in Section (9) (g) provides that the severance tax shall not accrue on the severance of gas used in the manufacture of carbon black; that this exemption is a gross, unreasonable discrimination against Calcasieu, since Calcasieu uses gas in connection with its manufacture of paper from natural pulpwood; that this provision does not afford Calcasieu equal protection of the laws and deprives it of property without due process of law.
 

 This contention also is without merit. The Legislature of a state may exercise a wide discretion in selecting the subjects of taxation. It may select those who are engaged in one class of business and exclude those engaged in others, if all similarly situated are brought within the class and all
 
 *515
 
 members of the class are dealt with according to uniform rules. Oliver Iron Mining Co. v. Lord, supra.
 

 Neither the Fourteenth Amendment to the federal Constitution nor the equality and uniformity requirements of the state Constitution prohibit the making of classifications in state legislation relating to taxation. Legislative classifications in tax matters are presumptively valid, the burden being on the challenger to prove that such a classification does not rest upon a reasonable basis, and will not be disturbed by the judiciary in the absence of unreasonable, discriminatory, or arbitrary action. 51 Am. Jur. 230, 234, Taxation, secs. 173, 174.
 

 In Heisler v. Thomas Colliery Co., 260 U.S. 245, 43 S.Ct. 83, 67 L.Ed. 237, it was contended that Pennsylvania could not tax owners of anthracite coal mines and not tax the owners of bituminous coal mines, as both kinds of coal were fuels and necessarily must be associated in the same class for taxation in disregard of whatever differences might exist between them. The issue before the federal Supreme Court was what resemblances or differences in objects justify their inclusion in, or their exclusion from, a particular class. The court observed that it would be “commonplace and wearisome to enlarge much upon the principle that presides in and determines the classification of objects. It is too necessary and too familiar in the affairs of life. * * * It is the process of considering objects together or in separation as determined by their properties or some of them, and the purpose we have in hand”. The court concluded that any classification was permissible which had a reasonable relation to some permitted end of governmental action.
 

 There is nothing illogical in classifying companies that manufacture paper differently from companies that manufacture carbon black. Obviously for some reason the Legislature wanted to favor the manufacture of carbon black. Bel Oil and Calcasieu allege nothing in their petition to show that this classification does not rest on a reasonable basis, or that it is unreasonable, discriminatory, or arbitrary.
 

 Although he sustained the exception of no cause or right of action as to Bel on other grounds, the trial judge concluded that the attacks levelled against the constitutionality of the statute in this case were without merit. He dismissed the suit as to Calcasieu on the ground that Bel, and Bel only, was the severer within the meaning of the Louisiana severance tax statute; that Bel, and Bel only, paid the tax under protest, and that any liability of Calcasieu for the tax arises under its contract with Bel and not under the provisions of the Louisiana statute relative to severance taxes or payment under protest.
 

 The trial judge in this ruling as to Calcasieu may be entirely correct. As we view
 
 *517
 
 the matter, however, we need not discuss his ruling because we have found that the tax is not unconstitutional on the grounds urged by plaintiffs. Accordingly Bel itself has no right in this suit to a judgment for the amount of these taxes, and certainly Calcasieu, which derives any right it may have from Bel, does not.
 

 Plaintiffs in brief set out a short legislative history of the Louisiana gas gathering and severance tax acts. They state correctly that this court in Bel Oil Corporation v. Fontenot, 238 La. 1002, 117 So.2d 571, held that the gas gathering tax there under consideration was unconstitutional as an additional tax on gas leases or rights which was prohibited by Section 21, Article 10, of our state Constitution. By Act 2 of the Extraordinary Session of 1958 the Legislature increased the severance tax authorized by Article 10, Section 21, of the Louisiana Constitution on the right to sever gas from .3^ per thousand cubic feet to
 
 2.3‡
 
 per thousand cubic feet. Plaintiffs argue that the additional severance tax as shown by the history of the acts is, in effect, the same tax injposed under the gas gathering statute which was declared by this court to be unconstitutional, and that consequently the severance tax should likewise be declared unconstitutional as violative of Section 21, Article 10, of the 1921 Constitution of this state. They urge that this court should not permit the Legislature to effect indirectly what the courts have held it could not do directly.
 

 There is no merit in this contention. The severance tax and the gas gathering tax are separate and distinct taxes, and, as observed by the trial judge “The severance tax is a tax completely different in concept and application from the earlier gas gathering taxes * * * The severance tax is not susceptible to attack on the same ground on which the gas gathering tax was found to be unconstitutional, for the imposition of this severance tax is specifically authorized by Article 10, Section 21, of our Constitution.
 

 In this case the trial judge has given written reasons for his judgment maintaining the exception, which we have found of considerable aid to us in understanding and determining the complex issues raised.
 

 For the reasons assigned the judgment appealed from is affirmed; plaintiffs-appellants are to pay all costs.
 

 [1]
 

 . The taxes for December, 1958, were paid under protest pursuant to R.S. 47:1576.
 

 [2]
 

 . Plaintiffs prayed in the alternative that the severance tax be held not applicable to Calcasieu Paper Company under the doctrine of contemporaneous construetion. In brief in this court, however, they state that this prayer on behalf of Calcasieu is abandoned so far as this suit is concerned.