210 So.2d 596 (1968)
David CROW, Trustee, Plaintiff-Appellant,
v.
SOUTHERN NATURAL GAS COMPANY, Defendant-Appellee.
No. 11005.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1968.
Rehearings Denied June 4, 1968.
*597 Shuey & Smith, Shreveport, for appellant.
Thompson, Thompson, Sparks & Cudd, Monroe, for appellee.
Before AYRES, PRICE, and STEPHENS, JJ.
AYRES, Judge.
The nullity of a gas-purchase contract is sought in this declaratory action on the basis there was no agreement with reference to the price to be paid for the gas. As an alternative proposition, a decree that the contract has been terminated in accordance with its terms is also sought. From a judgment rejecting plaintiff's demands, he has appealed.
Plaintiff, in his individual capacity and as executor of the estate of R. H. Crow, deceased, L. M. Crow, and W. C. O'Farrell, as sellers, and defendant, Southern Natural Gas Company, as buyer, entered into a gas-purchase contract dated July 29, 1955, which purported to establish between them a certain legal relationship including, among other provisions, first, the rights and duties of the defendant to buy and of plaintiff, Crow, and others, to sell natural gas produced by them in the Bear Creek Field of Bienville Parish; second, the price to be paid for the gas contracted to be sold; and, third, the *598 manner in which the contract may be terminated.
This action arises out of the provisions for reimbursement of plaintiff by defendant of certain taxes, the payment of which is the primary responsibility of the sellers. The resolution of the issues presented for determination are dependent upon an interpretation of the provisions of the contract relating to a basic price for the gas and to the reimbursement of taxes.
Plaintiff's position is that the obligation of defendant to reimburse a certain specified tax, or similar taxes, as well as the basic price recited in the contract constituted the consideration to be paid for the gas. Defendant contends, however, that inasmuch as the tax specifically designated was unconstitutional there is no tax for which the sellers are responsible for the payment, and hence there are no taxes for which sellers should be reimbursed. This contention is relied upon notwithstanding an identical levy was constitutionally imposed as a severance tax.
The contract contains these pertinent provisions; first, with respect to the price:
"The price which Buyer shall pay to Seller for each 1,000 cubic feet of gas on the basis of measurement and calculations as provided herein shall be:
"(1) From the effective date hereof to March 9, 1957-9.45¢;
(2) From March 9, 1957 to March 9, 1960-9.90¢;
(3) From March 9, 1960 to March 9, 1963-10.35¢;
(4) From March 9, 1963 to March 9, 1966-10.80¢;
(5) From March 9, 1966 to March 9, 1969-11.25¢;
(6) Thereafter so long as this agreement remains in effect-11.70¢";
and, second, with respect to taxes:
"Seller shall be obligated for the payment of all taxes now existing or hereafter levied while this agreement is in effect upon the production, severance or gathering of gas delivered hereunder. Buyer shall be obligated to reimburse Seller for all taxes now or hereafter levied while this agreement is in effect upon the gathering of gas delivered hereunder up to but not exceeding the present rate of such tax, viz., one cent ($0.01) per Mcf, plus one-half of the amount per Mcf by which such gathering tax may hereafter exceed one cent ($0.01) per Mcf. If such gathering tax or similar tax shall be imposed at a rate greater than two cents ($0.02) per Mcf, either Buyer or Seller may, at any time after such increase in taxes, and at its option by ninety (90) days' written notice to the other, cancel this agreement. Provided, however, that if such notice of cancellation be given by either party to the other, the party receiving such notice may continue the contract in effect in accordance with its terms by agreeing to absorb the economic burden of that part of the tax in excess of two cents ($0.02) per Mcf; that is, if such notice be given by Buyer, Seller may continue the contract by paying all of the amount by which the tax shall exceed two cents ($0.02) per Mcf." (Emphasis supplied.)
At the time of execution of the gaspurchase contract there was a tax of 1 ¢ per Mcf of gas levied by LSA-R.S. 47:671 et seq., which has been generally referred to as a gas-gathering tax. At the same time a severance tax of .3¢ per Mcf of gas was imposed under the provisions of LSA-R.S. 47:631 et seq. The gas-gathering tax was, however, subsequently increased by 1¢ per Mcf, thus making the gathering tax 2¢ and the total tax 2.3¢ per Mcf.
*599 By Act 3 of the Extraordinary Session of 1958 (House Bill No. 2) the Legislature "suspended" all of the gathering tax (2¢) as of 7 a. m. December 1, 1958, and directed that the tax "remain suspended until the question of whether such taxes are valid and constitutional * * * has been judicially determined by the final decision of a court of last resort." This statute further provides that "In the event the taxes are so judicially determined to be valid and constitutional, this suspension shall terminate commencing 7:00 A.M. the first day of the month following the finality of such judicial determination."
The statute was classified as "emergency legislation" and passage of the Act was made to depend upon passage of Act 2 (House Bill No. 1) of the same session which increased the severance tax by 2¢ per Mcf (the same amount as the gathering tax suspended by Act 3). Passage of House Bill No. 1, or Act 2, was, in turn, made to depend upon passage of Act 3. See Section 4 of Act 3 and Section 8 of Act 2. Both Acts were passed and approved by the Governor on November 17, 1958, with the result that the total tax on natural gas remained the same, or at the rate of 2.3 ¢ per Mcf.
In 1959 the gas-gathering tax was declared unconstitutional by the Louisiana Supreme Court in the case of Bel Oil Corporation v. Fontenot, 238 La. 1002, 117 So.2d 571 (1959). Nevertheless, the total tax of 2.3¢ on natural gas remains the same under the name "severance" tax.
Defendant's position is that it is not obligated to reimburse plaintiff any amount for taxes for the reason that its original obligation extended to the reimbursement of a portion of a gathering tax only and not to a severance tax even though a 2¢ per Mcf severance tax has been substituted for an identical levy which was designated as a gathering tax.
Legal agreements have the effect of law upon the parties and are to be given effect according to the true intent of the parties, which intent is to be determined from the words of the contract when the language employed is explicit and leads to no absurd consequences (LSA-C.C. Art. 1945). Thus, a cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire instrument (LSA-C.C. Art. 1955). Therefore, when provisions of a contract are susceptible of two interpretations, they must be given the interpretation which gives them effect rather than a sense which would render them nugatory (LSA-C.C. Art. 1951). Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782, 792 (1949); Reuter v. Reuter's Succession, 206 La. 474, 19 So.2d 209 (1944); Landeche Bros. Co. v. New Orleans Coffee Co., 173 La. 701, 138 So. 513 (1931); C. A. Andrews Coal Co. v. Board of Directors of Public Schools, 151 La. 695, 92 So. 303 (1922); Calhoun v. Ardis, 144 La. 311, 313, 80 So. 548, 549 (1918).
To give effect to provisions of the articles of the contract with reference to the basic price of the gas and the reimbursement of taxes, it can only be concluded that defendant's obligation to reimburse plaintiff for the gathering tax constituted an integral part of the consideration to be paid for the gas purchased. The so-called gathering tax was in effect at the time the contract was confected. Plaintiff, as seller, was required to pay this tax. The contract provided for defendant to reimburse him for the amount of taxes paid. The basic purchase price was therefore to be a net price to seller. It was not contemplated, nor can it be inferred from the contract, that plaintiff, as seller, would in any event be required to absorb the tax as that would result *600 in a reduction of the net basic price of the gas.
A question which logically follows is whether a change in the name of the tax from a gathering to a severance tax or the substitution of a severance tax for the gathering tax materially altered or modified the gas-purchase contract. The gas-gathering tax was not struck down and decreed unconstitutional in Bel Oil Corporation v. Fontenot, supra, because of its name, for, as stated therein, "In fact, although denominated a `gas gathering' tax, the levy covers a process which forms an integral part of severing the natural resource or reducing it to possession, * * *."
The invalidity of the gathering tax was predicated upon the fact that there was in force at the time of its imposition, a severance tax of .3¢ per Mcf of gas and under the provisions of § 21 of Art. 10 of the Louisiana Constitution of 1921, as amended, no further or additional tax could be imposed. The provision of the Constitution referred to stipulates:
"Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance * * *."
"No further or additional tax or license shall be levied or imposed upon oil, gas or sulphur leases or right, nor shall any additional value be added to the assessment of land, by reason of the presence of oil, gas or sulphur therein or their production therefrom."
The Legislature, however, in anticipation of the decision of the Supreme Court in Bel Oil Corporation v. Fontenot, supra, as evidenced by Act 2 of the Extraordinary Session of 1958, increased the severance tax by 2¢ to 2.3¢ per Mcf of gas in lieu of the existing .3¢ severance tax and the 2¢ per Mcf gathering tax. The net result is that plaintiff pays the tax of 2.3¢ per Mcf of gas; defendant refuses to make reimbursement in accordance with the terms of the contract; and plaintiff is therefore forced to pay that tax out of the basic price. If defendant's contention should be upheld, a reduction in the price of gas agreed upon would be forced upon plaintiff. This result was not in contemplation of the parties, as a consideration of the contract as a whole clearly shows.
By reference to the quoted provision of the contract with regard to reimbursement of taxes, the parties recognized that it was the seller's obligation to pay all taxes "now existing or hereafter levied while this agreement is in effect upon the production, severance or gathering of gas delivered hereunder." It was then provided that the "Buyer shall be obligated to reimburse Seller for all taxes now or hereafter levied while this agreement is in effect upon the gathering of gas delivered hereunder up to but not exceeding the present rate of such tax, viz., one cent ($0.01) per Mcf, plus one-half of the amount per Mcf by which such gathering tax may hereafter exceed one cent ($0.01) per Mcf."
That "gathering" encompasses the production and severance of gas is clearly indicated by the language of the contract to the effect that "If such gathering tax or similar tax shall be imposed at a rate greater than two cents ($0.02) per Mcf, either Buyer or Seller may * * * cancel this agreement." (Emphasis supplied.) The words "production," "severance," and "gathering" of gas in the quoted taxreimbursement provision of the contract are synonymous. Therefore, the provisions of the contract requiring defendant, as buyer, to reimburse plaintiff, as seller, for "all taxes now or hereafter levied while this agreement is in effect upon the gathering of gas delivered" includes and encompasses taxes upon the production or upon the severance of gas from the soil. Moreover, a "severance" tax is a similar tax to a "gathering" tax inasmuch as the "gathering" of gas is an "integral" *601 part of severing the natural resource or reducing it to possession.
The contract is clear and the conclusion is inescapable, under its terms, that defendant, as buyer, is obligated to reimburse plaintiff, as seller, for the severance tax on the gas sold to defendant on the proportional basis prescribed in the contract. The contract is therefore explicit as to the consideration to be paid by defendant for the gas purchased. This consideration comprises not only the basic price but the reimbursement of the prescribed proportional part of the taxes imposed. The "basic" price, together with the reimbursement of taxes, constitutes a firm, fixed, and definite price for the gas contracted to be sold. There is, therefore, no cause for an avoidance of the contract for the lack of an agreement as to the price to be paid by defendant for the gas.
With reference to plaintiff's alternative demand, the contract provides, as already pointed out, that:
"If such gathering tax or similar tax shall be imposed at a rate greater than two cents ($0.02) per Mcf, either Buyer or Seller may, at any time after such increase in taxes, and at its option by ninety (90) days' written notice to the other, cancel this agreement. Provided, however, that if such notice of cancellation be given by either party to the other, the party receiving such notice may continue the contract in effect in accordance with its terms by agreeing to absorb the economic burden of that part of the tax in excess of two cents ($0.02) per Mcf."
Such notices are required by the contract to be in writing and given by registered mail to the parties at addresses designated in the agreement or at such other addresses as the parties may designate in writing. These provisions of the contract with reference to notice were not complied with. Notice of a party's dissatisfaction with a contract and his desire for a discontinuance given in any manner other than that specified is insufficient. Notice resulting from a judicial demand is no compliance with the terms of the contract, even though the proceedings are dormant for a period exceeding the interval allowed the opposing party to exercise an option to continue the agreement in force and effect.
It may be noted that defendant urged a plea of res judicata in the trial court based upon a finding by the Federal Power Commission. In a hearing on an application for a certificate of convenience and necessity, and for a schedule of rates for the sale of natural gas, the Commission found that the payment of the tax concerned herein was the obligation of the sellers. This plea has not been urged before our court and, hence, may be considered abandoned. Texas Company v. Cooper, 236 La. 380, 107 So.2d 676 (1958); Wier v. Grubb, 228 La. 254, 82 So.2d 1 (1955).
For the reasons assigned, the judgment appealed is affirmed at plaintiff-appellant's costs.
Affirmed.