Dear Mr. Lundin:
This office is in receipt of your correspondence, wherein you advised that that you represent the Oil, Gas Watercraft Committee of the Louisiana Assessors' Association. On behalf of a number of assessors around the state, you seek an opinion of this office regarding the legality of the levy of ad valorem taxes on oil or gas stored at the site of extraction by a lessee/operator, after severance but prior to intrastate shipment. It is your suggestion that a lessee/operator of an oil or gas well should be considered as a third party when oil or gas is stored on site prior to intrastate shipment, and that such oil and gas should be considered to be "inventory" assessable for ad valorem taxes.
Implicitly, your request must be examined in light of La. Const. (1974) Art. VII, Sec. 4(B), which pertains to the taxation of natural resources which have been severed from the soil, and provides, in pertinent part:
 "Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Natural resources may be classified for the purpose of taxation. Such taxes may be predicated upon either the quantity or value of the products at the time and place of severance. No further or additional tax or license shall be levied or imposed upon oil, gas, or sulphur leases or rights. No additional value shall be added to the assessment of land by reason of the presence of oil, gas, or sulphur therein or their production therefrom " (Emphasis added).
Respectfully, in accordance with La. Const. (1974) Art. VII, Sec.4(B) and the legal authorities set forth below, it is the opinion of this office that oil or gas stored on site by a lessee/operator prior to first sale is not subject to ad valorem tax.
Pertinent to this inquiry are the decisions of the Louisiana Supreme Court, rendered in Porterie v. Hunt, 162 So. 777 (La. 1935), Meyers v. Flournoy, 25 So.2d 601 (La. 1946) and Bel OilCorporation v. Fontenot, 117 So.2d 571 (La. 1959). In each of these decisions, the Louisiana Supreme Court interpreted La. Const. (1921) Art. 10, Sec. 21, a provision virtually identical to La. Const. (1974) Art. VII, Sec. 4(B).
In Porterie v. Hunt, the Court upheld the imposition of tax on the generation of electricity used in oil and gas production, for the reason that the statute imposing the tax in question did not "attempt to levy an additional license or tax upon oil or gas lease rights." Pertinently, the Court stated, with respect your inquiry, that:
 "The constitutional provision authorizing the Legislature to levy a severance tax prohibits the levying of any further license or tax upon oil or gas lease or rights." (Emphasis added).
In Meyers v. Flournoy, the plaintiff, owner of three producing gas wells and the equipment located on the lease associated with the wells, opposed the ad valorem taxes imposed upon the equipment, alleging that same violated La. Const. (1924) Art, 10, Sec. 21. The Court determined that the constitutional provision did not shield corporeal movable property used in the exploration and production of natural resources from taxation, but noted:
 "In clear and unequivocal language [the Constitution] provides that in view of the severances taxes that may be imposed on natural resources severed from the soil or water, no tax or license shall be levied or imposed upon oil, gas or sulphur leases or rights."
Bel Oil Corporation v. Fontenot determined that a gas gathering tax imposed on the transportation of gas after its severance from the well to the first meter at or near the well violated the Constitution. Pertinently, that Supreme Court states:
 "The District Judge, in a well considered opinion, reasoning that the plaintiff has the right under its leases not only to explore for and produce gas but also to market the gas so produced, since otherwise the right to explore for and produce would be valueless, and that in marketing the gas the producer must necessarily measure it, and that the tax here involved covers that precise operation, i.e., the transporting of gas after severance to the first meter, concluded `* * *it is a license tax on the exercise of a right under the lease' and therefore void under the language of Section 21 of Article 10, La. Constitution of 1921, as amended." (Emphasis added).
The Bel Oil decision goes on to state:
 "We think that under the clear language of the Constitution, `No further or additional tax or license shall be levied or imposed upon oil, gas or sulphur leases or right,' no room for doubt is left; the levy under attack is another tax upon gas leases or rights, and as such comes squarely under the quoted prohibition. In fact, although denominated a `gas gathering' tax, the levy covers a process which forms an integral part of severing the natural resource or reducing it to possession, and as such must be struck down " (Emphasis added).
In an opinion of this office dated March 27, 1968 (p. 243), with respect to La. Const (1921) Art. X, Sec. 21, a constitutional provision virtually identical to La. Const. (1974) Art. VII, Sec.4(B), this office considered the taxability of butane and propane gas held for sale in underground storage facilities by `purchasers' of the butane and propane, as "extractors or producers of gas". Therein we stated:
 "Where a natural resource is extracted from land and thereby reduced to possession and ownership, the severance tax thereon is immediately due and must be paid by the owners thereof in proportion to their respective interests (Texas Co. V. Fontenot, 1942, 200 La. 753, 8 So2d 689). That judicial pronouncement clearly implies, among other things, that the tax only relates to and is a part of severance, not what happens to the natural resource after its extraction from the soil or water. This does not mean that the same natural resource, immediately after production and severance, may be placed on the assessment rolls for ad valorem taxation purposes, but it does appear to mean that that the exemption, after severance and payment of the tax, would continue to apply no matter where the natural resource is placed or stored and no matter where the use and disposition of the product "
The cited legal authorities lead us to the conclusion that ad valorem taxes should not be levied or assessed on oil and gas held by a producer thereof; such taxes should not be levied until after the oil or gas has been introduced into the stream of commerce by first sale. In accordance with Bel Oil Corporation, supra, a lessee/operator " has the right under its leases not only to explore for and produce gas but also to market the gas so produced, since otherwise the right to explore for and produce would be valueless " See also: Hanover Compressor Company v.Department of Revenue, 838 So.2d 876 (La.App. 3rd Cir. 2003). In the marketing of oil and gas, it seems only reasonable that the producer may need to store it, prior to first sale, and would receive the right to do so from the landowner. It follows that a tax on such stored resources, prior to first sale, would be void under La. Const. (1974) Art. VII, Sec. 4(B).
In reaching our conclusion herein, we have also considered the determination of the Louisiana Tax Commission, which has the responsibility of enforcing and administering laws relating to local property tax assessments. LSA-R.S. 47:1837(A). In accordance with the doctrine of contemporaneous construction, the interpretation an administrative agency or department has, over a long period of time, placed upon a statute or law it is charged with executing must be given great weight. Ouachita Parish SchoolBoard v. Ouachita Parish Supervisors Association, 362 So.2d 1138
(La. 1978).; Washington v. St. Charles Parish School Board,288 So.2d 321 (La. 1974); Dominion Land Co,. v. Stark, 100 So. 244
(La. 1924). Pertinently, the rules and regulations of the Tax Commission, at LTC Rules and Regulations Chapter 17, Section 1701, provide a definition of "inventory" in order to prescribe the types of property subject to taxation. In accordance with Section 1701(B)(4), the term "inventory":
 "does not include oil stored in tanks held by a producer prior to the first sale of the oil. Oil stored in tanks held by a producer prior to the first sale of the oil, shall not be subject to ad valorem tax."
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can assist you in other areas of the law.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam