**CITY OF NEW ORLEANS and Robert E. Develle, Director of Finance of the City of New Orleans, Appellants,**

**v.**

**UNITED STATES of America et al., Appellees.**

**No. 22554.**

United States Court of Appeals Fifth Circuit.

Jan. 6, 1967.

Rehearing Denied Feb. 10, 1967.

Ernest L. Salatich, Asst. City Atty., Alvin J. Liska, City Atty., Preston H. Hufft, Asst. City Atty., New Orleans, La., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, J. Edward Shillingburg, Attys., Dept. of Justice, Washington, D. C., Richard M. Roberts, Acting Asst. Atty. Gen., Washington, D. C., Louis C. Lacour, U. S. Atty., Walter F. Gemeinhardt, Asst. U. S. Atty., of counsel, for the United States.

David J. Conroy, Guy C. Lyman, Jr., of Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., for Chrysler Corp.

Before BROWN, BELL and DYER, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

What started out a decade ago as one of those always knotty problems of municipal-state taxation of equipment or materials used or consumed by contractors in the performance of a contract for the Federal Government has been greatly simplified by two trips to the Louisiana Supreme Court and, in a companion state tax case, a trial in the State Court with a successful sequel in the Federal District Court. The case comes to us from a summary judgment in favor of the Government and against the City of New Orleans. We resist the importunities of the City to require once again a trial on the intrinsic merits and affirm on established principles of collateral estoppel. This means we also reject the other contentions of the City.

The case grows out of a 1951 "facilities contract" by which Chrysler Corporation undertook to acquire and install the necessary machinery and equipment in the Government's vast Michoud Ordnance Plant [1] to adapt it for the production of military tank engines.[2]

In the course of these activities Chrysler acquired approximately 40 million dollars of tangible personal property comprising machinery, equipment, furniture and some materials. Of this about 92% was purchased from vendors outside of Louisiana and shipped to Chrysler at Michoud under usual carriers' commercial bills of lading. The remaining 8% was sold and delivered F.O.B. Michoud or installed by the vendors. In November 1955 the City assessed Chrysler a "use" tax of $405,903.00 under its Sales and

---

1. Subsequently Michoud was sold to the New Orleans Dock Board. Its reacquisition by the Government for the Space Program likewise provoked extended litigation. United States v. Michoud Indus. Facilities, 5 Cir., 1963, 322 F.2d 698.

2. This facilities contract apparently was at bare cost. Chrysler's profit was to come from its manufacturing activities using a government-owned plant pursuant to a separate contract.

Use Tax Ordinance.[3] Fearing a distraint and sale of its properties and at the direction of the Government, Chrysler arranged for payment under protest and a special escrow agreement. On November 25, 1955, the Government reimbursed Chrysler for the cash and Government bonds deposited in escrow. And on December 13, 1955, again at Government direction, Chrysler instituted its suit in the Louisiana State Courts under Ord. No. 15,201 (note 3, supra).[4]

To that suit the Louisiana Trial Court sustained the City's exception of no cause of action presumably on the ground that Chrysler had not paid the tax. On appeal, the Supreme Court of Louisiana reversed and remanded the case. The court held that the petition stated a cause of action. The assessment was invalid because the ordinance taxed the exercise of a right or power over property incident to *ownership*, and Chrylser, in view of the terms of the facilities contract and the allegations of the petition, did not own the property in question. The court pointed out that the contract provided that title to the property vested in the Government upon the acquisition by the contractor or its subcontractors or upon installation in the plant, whichever occurred first, and that the petition alleged (the allegations of which were to be taken as true on an exception of no cause of action) that, pursuant to the contract, title passed out of the seller and, with no intervening period of time, vested in the Government prior to the time the property came into the State of Louisiana and had continued since in the United States. The court also declared that, in its view of the contract, Chrysler was procuring or purchasing the property as an agent of the Government. Chrysler Corp. v. City of New Orleans, 1959, 238 La. 123, 114 So.2d 579.

The case came back for trial on its merits. On remand, the City filed an ex-

---

3. Ordinance No. 15,201, as amended:

"Sec. 2. * * * That there is hereby levied * * * a tax upon the sale at retail, the use, the consumption, the distribution, the distribution and storage in this City, of each item or article of tangible personal property, as defined herein, and upon the lease or rental of such property and the sale of services, within the City of New Orleans; the levy of said tax to be as follows:

" * * * *

"(b) At the rate of one per cent (1%) of the cost price of each item or article of tangible personal property when the same is not sold, but is used, consumed, distributed, or stored for use or consumption in this City; provided there shall be no duplication of the tax.

" * * * *

"Sec. 1.

"(1) 'Use' means and includes the exercise of any rights or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business."

4. "Remedy at law for aggrieved dealer.

"(a) Right of action is hereby created to afford a remedy at law for any dealer aggrieved by the provisions of this Ordinance; and in case of any such dealer resisting the payment of any amount found due, * * * such dealer shall pay the amount found due by the Commissioner and shall give * * * notice, * * * of his intention to file suit for the recovery of the same; and upon receipt of such notice, the amount so paid shall be segregated and held by the Commissioner, for a period of thirty (30) days; and if suit be filed within such time for recovery of such amount, such funds so segregated shall be further held, pending the outcome of such suit. * * *.

"Service of process upon the Mayor of City.

"(b) This section shall afford a legal remedy and right of action * * * for a full and complete adjudication of any and all questions arising in the enforcement of this Ordinance, as to the legality of any tax accrued or accruing or the method of enforcement thereof. * * *.

"Relief in State or Federal Courts.

"(c) This section shall be construed to provide a legal remedy in the State or Federal Courts, by action of law, in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, * * *, or in any case where jurisdiction is vested in any of the Courts of the United States; * * *."

This substantially tracks the Louisiana State Procedure, LSA–R.S. 47:1576, see note 20, post.

ception of want of interest, contending that Chrysler was without interest in the subject matter of the litigation. The trial court overruled the exception, tried the case on its merits, and rendered judgment for Chrysler against the City for $546,517.35, plus interest and costs and denying the City's reconventional demand for penalties and attorneys' fees and an alternative demand for a lessee's tax.

The City appealed. The Supreme Court of Louisiana reversed. Holding that the trial court had erroneously overruled the City's exception of want of interest and dismissing Chrysler's petition, the Court declared:

"For a right of action under this ordinance, a party must be aggrieved. A pecuniary interest is essential. As we stated in our previous decision herein, the 'use' embraced by the ordinance is the exercise of a right or power over property incident to ownership. The tax is imposed upon the owner. In the instant case the owner was the United States. Chrysler paid the tax under instructions of the United States government with attendant reimbursement. Moreover, the United States is ultimately entitled to the money if it is recovered. Under these circumstances, Chrysler does not have the requisite interest to maintain this action." [5]

Under Louisiana procedure the intervention of the United States fell with the main demand of Chrysler. The petition of Chrysler and the United States for rehearing was denied. 243 La. 514, 145 So.2d 17. The decisions of the Supreme Court of Louisiana have become final.

The present Federal Court action was instituted by the United States and Chrysler on December 28, 1962. It seeks the recovery of the amount held in escrow by the City on the grounds of money illegally had and received, unjust enrichment, and the terms of the escrow agreement. In its answer, the City denied some of the allegations of the complaint and asserted several defenses (i. e., statute of limitations, estoppel, laches, election of remedies, and the Tenth Amendment to the Constitution of the United States) and a counterclaim against Chrysler for the amount of disputed assessment, penalties, etc. The United States and Chrysler moved for summary judgment, asserting that there was no genuine issue as to any material fact, and that the defenses and counterclaim of the City were insufficient in law. The motion was based on affidavits incorporating the opinions, judgments, record, and briefs in the state court litigation.

The Court granted judgment for the United States, ordering the City to pay over all cash and obligations held under the escrow agreement, and dismissed the counterclaim of the City.

The City makes two principal attacks. The first is that there are disputed issues of fact. These questions are (a) whether Chrysler was purchasing as agent for the Government and (b) whether the Government became the owner of these properties with Chrysler never acquiring any ownership in them. Consequently, summary judgment was unwarranted. The second is that the Government has not, and cannot now, comply with the tax recovery machinery prescribed in the ordinance (see note 4, supra).

Of course, the first attack has to assume that collateral estoppel does not apply. We say "has to assume" because the City's position is unclear. The City's escape from the prior holdings of the Louisiana Supreme Court seems to us to be the impermissible one of showing that that Court was in error. The City really never challenges the proposition that such holdings were essential to the judgment rendered. But since a discussion of the City's contentions on the intrinsic merits illumines the critical question of *essentiality*, some brief comments are warranted.

5. Chrysler Corp. v. City of New Orleans, 1962, 243 La. 498, 145 So.2d 11, 14.

The City builds its structure on principles to which all subscribe. Capsulated it runs this way. In the early case of McCulloch v. Maryland, 1819, 4 U.S. (4 Wheat.) 316, 4 L.Ed. 579, the principle was enunciated, as an interpretation of the supremacy clause of the Constitution, that the property of the Government and its instrumentalities was free from taxation by the States. But two corollaries of this rule exist. First, that property of contractors of the United States Government purchased by these contractors and used by these contractors in the States is subject to taxation by the States. See Henneford v. Silas Mason Company, 1936, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; Curry v. United States, 1941, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9. These Government contractors are not instrumentalities of the United States as has been pointed out by the Supreme Court of the United States consistently. See United States v. Township of Muskegon, 1958, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436. The second corollary to the doctrine of McCulloch v. Maryland is that as to property directly sold by vendors to the Government and in turn delivered to Government Contractors for their use, the States cannot levy taxes on this property. The two most recent cases affirming this proposition are United States v. Allegheny County, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209, and Kern-Limerick, Inc. v. Scurlock, 1954, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546.

Against this backdrop and particularly *Kern-Limerick,* supra, and cases of like holding, the City emphasizes what it regards as decisive distinctions. Thus, unlike *Kern-Limerick,* where the contract expressly provided that the contractor " * * * shall act as the purchasing agent of the Government * * * and the Government shall be directly liable to the vendors for the purchase price," and that "Title to all such materials * * * shall pass directly from the vendor to the Government without vesting in the Contractor * * * ",[6] the contract here is silent as to agency, imposes no direct liability on the Government to vendors, and is much less positive as to passage of legal title,[7] especially in view of specific provisions requiring inspection and approval by Government inspectors prior to payment of vendors by Chrysler.[8] These differences and the actual practices followed here of the use of commercial, not Government Bills of Lading, invoices by vendors to Chrysler, not the Government, shipments to Chrysler, not the Government, are enough, so the City urges, to take the

---

6. See note 2, 347 U.S. 110, 112, 74 S.Ct. 403, 405, 98 L.Ed. 546, 549, 551.

7. The Chrysler contract stated:
   "3. Title to the equipment, machinery and other facilities including installation materials and freight shall vest in the Government upon acquisition by the Contractor or its subcontractors or vendors or upon installation in the Government-furnished plant, whichever first occurs, or upon acquisition or installation for use in other plants when approved by the Contracting Officer, whichever occurs first. To the extent permitted by law the said equipment, machinery and other facilities shall remain personalty or movables, notwithstanding the fact that they may be affixed or attached to realty or immovables.
   "4. All purchase orders issued or other contracts made by the Contractor for the acquisition and installation of the equip-

ment, machinery and other facilities and for the performance of any other work provided for in this contract shall be subject to the prior written approval of the Contracting Officer.

8. "Payment on Acquired or Completed Items: Upon the acquisition by the contractor of materials, equipment, machinery, and other facilities required under the contract, or upon the installation, renovation or the completion of manufacture of any of the above described property by the Contractor hereunder, the Contracting Officer shall promptly inspect and accept or reject such items and thereafter, upon presentation of property certified invoices or vouchers or other evidence of payment, reasonably satisfactory to the Contracting Officer, the Government shall re-imburse the Contractors for all costs and expenditures made under this contract."

**26**

case out of United States v. Livingston 1959, E.D.S.C., 179 F.Supp. 9, Livingston v. United States, aff'd, 1960, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719, as construed in United States v. Boyd, 1964, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713. Indeed, to the contrary, it urges the case is ruled by Alabama v. King and Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615, certainly to the extent of requiring a factual trial and factual determination.

■ But as earlier stated, we need not assay the correctness of these contentions. The City is making them in the wrong Court at the wrong time. Either from unpersuasiveness in the efforts before the Supreme Court, or more likely, one of those expensive and unwanted consequences of a tactical or strategic position successfully maintained, the fact is that the City sought and obtained a clear holding that the United States, not Chrysler, was the owner of these properties. In a contest between the same parties or those in privity,[9] neither can relitigate that issue if—and the if here is no if at all—it was necessary to the decision.[10]

■ The essentiality of these holdings is quickly demonstrated. At the trial on the merits after remand from the Supreme Court's first decision, the Louisiana trial court overruled the exception of want of interest filed by the City and granted judgment for Chrysler.

On the second appeal, the City contended that (1) Chrysler, not the United States, purchased the property from the vendors; (2) Chrysler did not transfer title to the United States until the property had been accepted at the Michoud Ordnance Plant in New Orleans; (3) Chrysler exercised rights incident to ownership of the property in New Orleans; (4) Chrysler did not purchase the property for resale but used and consumed it in performing its contract to deliver a facility to produce tank engines; and alternatively (5) Chrysler was liable for a lease tax.

But in the event the Court found that Chrysler did not own the property, then the City contended that the Court must dismiss the petition for want of interest. The City, relying on Krauss Co. v. Develle, 1959, 236 La. 1972, 110 So.2d 104,[11] and distinguishing Bel Oil Corp. v. Fon-

9. The United States through its Attorney General and the Department of Justice was in open, full command of this litigation. See list of counsel 114 So.2d 579, 145 So.2d 11. Bros Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1958, 261 F.2d 428, 430–431.

10. The Government's brief cites these Federal and Louisiana cases. Cromwell v. County of Sac. 1876, 94 U.S. 351, 353, 24 L.Ed. 195; City of New Orleans v. Citizens' Bank of Louisiana, 1897, 167 U.S. 371, 396–399, 17 S.Ct. 905, 42 L.Ed. 202; United States v. Moser, 1924, 266 U.S. 236, 241–242, 45 S.Ct. 66, 69 L.Ed. 262; Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898. See also, Heroman v. Louisiana Institute of Deaf and Dumb, 1882, 34 La.Ann. 805, 814–815; California Co. v. Price, 1958, 234 La. 338, 99 So.2d 743, 746–747; Johnson v. Lemons, 1963, La.App., 157 So.2d 752. To these may be added many more, e. g., United States v. Burch, 5 Cir., 1961, 294 F.2d 1, 5–6; Adams v. United States,

5 Cir., 1961, 287 F.2d 701, 703–704; Seaboard Airline R.R. Co. v. George F. McCourt Trucking, Inc., 5 Cir., 1960, 277 F.2d 593. Regarding "essential" facts, see generally Restatement, Judgments § 68, comments n. o (1942).

11. In Krauss, merchants sought the refund of city sales taxes collected by them from their customers on merchandise delivered outside the Parish of Orleans. They contended that they were aggrieved within the meaning of Section 15 of the Ordinance. The City contended that the tax was imposed on the purchasers, that they alone had a remedy for refund, and that since the merchants were not taxpayers they were without interest to sue for money which did not belong to them. The Court sustained exceptions of want of interest, relying on Kesbec, Inc. v. McGoldrick, 1938, 278 N.Y. 293, 16 N.E. 2d 288, and holding that only the customers who were taxed by the ordinance and who had paid the taxes could maintain an action for refund.

tenat, 1959, 238 La. 1002, 117 So.2d 571,[12] asserted that the right to maintain a refund action under the ordinance was vested only in the person who was taxed and who paid the tax (even though subsequently reimbursed by another). If Chrysler had never owned the property, then it was not taxed, and it could not maintain the action.[13]

The Government on the other hand, argued that no tax was due because the property was that of the United States, not Chrysler, and the tax was incident to ownership. As to want of interest, it urged Chrysler, though reimbursed, had standing under *Bel Oil* (note 12, supra).

Thus, as the case was presented to the Supreme Court of Louisiana, the Court first had to determine whether Chrysler had ever owned the property in New Orleans. If it did, then the Court had to consider Chrysler's alternative argument that its purchase was still exempt from the tax because it purchased for resale. However, if the Court found that Chrys-

ler did not own the property, then, under the City's argument, the Court had to dismiss the action. Consequently, ownership of the property was the key issue for consideration.

The Supreme Court of Louisiana maintained the City's exception of want of interest and reversed. The rationale of the Court was that under the principle of the *Krauss* case the only one who could bring a refund action under Section 15 of the Ordinance was the one who was taxed and who paid the tax.[14]

And as though once was not enough, the City in response to the Government's petition for rehearing on the question of standing, added to its strong contentions earlier made (see note 13, supra) in order to hold onto its victory.[15]

The City cannot have it both ways. It cannot claim the Government is the owner to deny standing to Chrysler, the payor, and when that is achieved turn on the Government to say that Chrysler was the owner.

12. In *Bel Oil*, a gas gatherer (Bel Oil) paid under protest a gas gathering tax and was reimbursed by its customer (Calcasieu). The court held the tax invalid and allowed the gas gatherer to recover it in a refund action brought under a statute (LSA–R.S. 47:1576) substantially identical to Section 15 of the Ordinance. The trial court had previously held that the customer could not maintain the action. See also Bel Oil Corp. v. Roland, 1962, 242 La. 498, 516, 137 So.2d 308, 314–315.

13. Thus in its Original Brief on Merits, the City urged:
"In the instant case the ordinance levels the tax at the owner. Under the holding of this Court in the above two cited cases [Krauss Co. v. Develle, 1959, 236 La. 1072, 110 So.2d 104 and Bel Oil Corp. v. Fontenot, 1959, 238 La. 1002, 117 So.2d 571] only the owner, the person against whom the tax is levied and who pays the tax, has the right of action under the ordinance 15(a) to maintain the action for refund. If the United States Government is found by this Court to have been the owner of this property before it came into Louisiana and into New Orleans, the Chrysler Corporation has no right to maintain the action for refund.

Only the Government, who is the owner, and, is taxed under the Ordinance, and, who paid the tax, could maintain the action for the refund. (See Act 330 of 1938, Section 2(a))."

14. Its reasons are quoted above at note 5 and related text.
Additionally, ownership was also critical in the Court's analysis and application of the taxing ordinance:
"As we stated in our previous decision herein [238 La. 123, 114 So.2d 579] the 'use' embraced by the ordinance is the exercise of a right or power over property incident to ownership. *The tax is imposed upon the owner. In the instant case the owner was the United States.*" (Emphasis added.) 243 La. at 505–506, 145 So.2d at 14.

15. In its brief in opposition to Government's petition for rehearing, the City concluded:
"The fact that the City assessed the tax to Chrysler does not change the rule of the *Krauss* case. There could only be one owner of the property and this Court has held that the Government is the owner. The owner, the Government, paid the tax to Chrysler. And the owner, the Government, is the one whom the ordinance levels the tax at."

■ By Louisiana standards of standing under Louisiana procedure, ownership in the Government was critical. What is critical is essential. And what is essential may be tried but once.[16]

There was nothing to try. Summary judgment was warranted.

It having been judicially determined beyond recall or retrial that the Government, not Chrysler, was the owner, the only question left is whether the United States in its own Courts can maintain an action to get its own money back. Arguing in the negative, the City contends that the time and notice limitations of the ordinance (see note 4, supra) forbid recovery now. But this is really to engage in a sort of now-you-see-it-now-you-don't sleight of hand. It urges that while Chrysler took timely action, its payment was a nullity because in reality it was made not for its own account, but for that of the Government who actually reimbursed Chrysler shortly. And while the Government, not Chrysler, actually paid the tax, the Government cannot recover it even though invalid since it was paid through one having no liability and therefore no standing to recover it back.

■ Against the inequities of such a procedural trap, we think there is ample power in the United States District Court to protect the sovereign against such unjust enrichment on familiar principles of money had and received. United States v. Independent School Dist. No. 1, 10 Cir., 1954, 209 F.2d 578; United States v. City of Philadelphia, E.D.Pa., 1943, 50 F.Supp. 170 approved by this Court, United States v. Paddock, 5 Cir., 1949, 178 F.2d 394.[17] This harmonizes with the usual principle that Federal law fashions remedies for recovery of funds or property of the United States—including those from invalid tax exactions.[18]

This holding makes it inescapable for us to disapprove as to the United States the contrary conclusion in the companion case growing out of collection of $900,000 for Louisiana State sales and use tax, LSA–R.S. 47:301, on Chrysler's Michoud activities. United States v. Cocreham, E.D.La., 1965, 247 F.Supp. 731.[19] Judge West, in a full opinion tracing the identical course of that case under a state tax refund statute, LSA–R.S. 47:1576, in all

---

16. The City is in agreement that the dismissal of the Government's intervention by the Supreme Court of Louisiana has no prejudicial effect. Under Louisiana law, an intervenor cannot maintain an action after the plaintiff's petition has been dismissed, but is relegated to asserting his cause of action by an independent action. Barron v. Jacobs, 1886, 38 La. Ann. 370; Gorman v. Gorman, 1925, 158 La. 274, 103 So. 766; Erskine v. Gardiner, 1926, 162 La. 83, 110 So. 97.

But in view of this Louisiana procedural result there is nothing to the City's claims that under abstention principles the Government is now cut off from this resort to its own Courts under NAACP v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405, or England v. Louisiana State Bd. of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

17. "Turning to the question of voluntary payments, see United States v. City of Philadelphia, 50 F.Supp. 170, 171, wherein the court said: 'It has also been repeatedly held that the defense of vol-

untary payment is not good as against the United States.' See also United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 638, 82 L.Ed. 932, wherein the court said: 'The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid. "No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute," United States v. Bank of Metropolis, 15 Pet. 377, 401, 10 L.Ed. 774. * * *.'" 178 F.2d 394, 396–397.

18. See, e. g., Board of Commissioners of Jackson County Kansas v. United States, 1939, 308 U.S. 343, 60 S.Ct. 285, 84 L. Ed. 313; United States v. Bureau of Revenue, 10 Cir., 1961, 291 F.2d 677; United States v. Independent School Dist. No. 1, supra; Bryan County Okl. v. United States, 10 Cir., 1941, 123 F.2d 782; United States v. City of Philadelphia, supra.

19. Now pending on appeal to this Court, No. 23589. We do not undertake to determine any other issues therein presented.

respects identical to the city ordinance (note 4, supra) holds the parties, as do we, to the earlier judicial finding of ownership in the Government, not Chrysler. However, recovery was denied because the United States did not and could not comply with the tax refund statute, LSA–R.S. 47:1576.[20]

None of the City's other contentions deserve mention. Summary judgment and effectuating injunctive orders were correct.

Affirmed.

---

**20.** The Court seems to mix both procedural timeliness and substantive inability for the Government to bring itself under 47:1576. The latter is based on the neat logic that the United States paid no tax. Indeed, no tax constitutionally could have been assessed against it. The predicament of the Government arises from its premature reimbursement of Chrysler. This deprived Chrysler of its opportunity for refund. The Government loses out because "At the same time, the United States, not having been assessed any tax by the State of Louisiana, simply has no standing under the provisions of the statute to bring this suit for the refund of monies paid to the State of Louisiana by some third party." 247 F.Supp. 731, 739.

Judge West therefore concluded: "The State of Louisiana had no authority to levy or collect a tax from the United States of America, nor did it ever attempt to to do so. The United States never paid any tax to the State of Louisiana, either voluntarily or involuntarily, and because of this fact, the United States did not and could not comply with the provisions of LSA–R.S. 47:1576. This statute, being the only means by which one can sue for the recovery of taxes paid, and the United States not having complied with that statute, it obviously cannot maintain this action against the State of Louisiana for a refund of these taxes." Id. at 740–741.