HAMITER, Justice.
 

 The Shell Oil Company, Incorporated, paid under protest to defendant, the Collector of Revenue of the State of Louisiana, a severance tax on certain gas that it had flared into the atmosphere (burned), after using that gas .for the purpose of lifting oil from oil wells, and in this suit it seeks recovery of the amount thus paid. Plaintiff claims that such gas is excluded from the tax by the provisions of the severance tax law; defendant contends that it is taxable.
 

 From a judgment in plaintiff’s favor defendant is appealing.
 

 An agreed statement of facts1 discloses that when a well is to be completed as a producing oil well a string of pipe known as casing is run into the drilled hole and cemented to the earth. The purpose of this casing is to provide safe operation of the well, to prevent caving of the side walls of the hole, and to seal off various formations penetrated in drilling. After the hardening of the cement, another string of pipe of smaller diameter called tubing is placed inside the casing. Usually the oil is produced through this tubing.
 

 On the completion of the well the oil, ordinarily, flows naturally because of the pressure then existing in the oil bearing formation. However, after the pressure becomes reduced to such an extent that there is no natural flow some artificial method, of which several are available, is employed to bring the ojl to the surface.
 

 In gas-lifting a well, which is the method used by plaintiff, gas is taken from a flowing oil or gas well (most of plaintiff’s are oil wellsj, transported through a connecting pipe lying on the surface of the ground, and injected into the well in which the oil is to be lifted. The gas so injected goes down into the casing (but does not enter the pores of the earth) and causes the oil to rise to the surface.
 

 There are two other operations wherein gas is injected into the earth, but neither has for its primary purpose the lifting of ■ oil. These are (a) repressuring — the reinjecting of gas into the oil producing stratum or formation so as to keep up or rebuild the natural pressure, and (b) recycling — the reinjecting of gas into a condensate producing formation, after having run the gas through a stripping plant.
 

 
 *239
 
 In the process of gas-lifting, all of the injected gas becomes commingled with the oil and is produced along with it. Additionally, the oil usually contains in solution with it what. is known as formation gas. After being brought to the surface, the, commingled substances (oil, injected gas and formation gas) are run through a mechanical device, known as a separator, which separates the oil from the gas. The oil is then piped to a tank, and the gas is either flared (burned) or is put into commerce or utilized.
 

 The severance tax is paid by plaintiff without protest on all of the gas utilized or put into commerce. As to the gas that is flared, the Collector of Revenue maintains that the injected gas — the subject matter of this suit — is taxable, but he does not claim a tax on the formation gas. In determining the amount of formation gas produced, the known quantity of injected gas is deducted from- the total quantity of gas that comes from the separator.
 

 The gas, tax on which is here involved, is produced by plaintiff under lease contracts. Generally speaking, the leases require the payment of royalty on gas that is used off the leased premises and permit the operator to use, royalty free, gas for all operations on the leased premises. Pursuant to those provisions the royalty owners are paid for gas used in gas-lifting where the flowing well is on the premises of .one lessor and the gas-lift well is on the premises of another, and likewise no royalty is paid for such) gas where .the flowing well and the gas-lift well are on premises- covered by the same lease.
 

 In Section 1 of Act No. 24, Second Extra Session, of 1935, this Act superseded Act No. 140 of 1922, as amended, it is recited, “That for the year 1935, and for each subsequent year, taxes as authorized by Section 21 of Article 10 of the Constitution of 1921, are hereby levied upon all natural resources severed from the soil or water * * *.” Paragraph 8 of Section 2 of that Act provides for a tax, “On gas, one-fifth (l-5th) of one cent (lc) per thousand cubic feet, measured at ten ounce (10 oz.) pressure.”
 

 In 1936, by Act No. 119, the Legislature amended Paragraph 8, Section 2 of -the 1935 Act to the extent of increasing the tax on gas to three-tenths of one cent per thousand cubic feet and of providing for the method of distributing the proceeds.
 

 The severance tax law with respect to the tax on gas was next amended by 'Act No. 145 of 1940, p. 560, and-it was again amended by Act No. 284 of 1942, p. 952. These statutes are to be especially considered in determining, the issue presented by this appeal, since plaintiff’s operations, on which the liability is claimed herein, occurred during a portion of the effective period of each. The taxpayer insists that gas used by it for gas-lifting its oil wells is excluded from the tax by both acts; the Collector entertains a contrary view.
 

 The 1940 Act, in so far as pertinent, provides :
 

 “On gas, three-tenths of one cent ■ (3/10ths of lc) per thousand cubic feet, measured at ten ounce (10 oz) pressure. In determining the quantity of) gas for-.the
 
 *241
 
 purpose of such tax and in the calculation of such tax, there shall, be excluded: Gas injected into the earth in the State of Louisiana for any of the following purposes :
 

 “(a) Storage thereof
 

 “(b) Recycling
 

 “(c) Repressuring
 

 “(d) Lifting oil; provided this exemption shall not apply to gas severed in ‘lifting oil’; * *
 

 If the proviso of paragraph (d) were not in the quoted provision, it could be said with certainty that the Legislature intended by the 1940 Act to exempt from the severance tax the gas used by plaintiff in the operations involved herein. In unambiguous language the Act, less such proviso, provides for the exemption of gas injected into the earth for the purpose of (a) storage, (b) recycling, (c) repressuring, and (d) lifting oil. True, unlike the other three processes, in the process of lifting oil the gas does not permeate the earth’s pores or formations; it goes only into the well casing and returns commingled with the oil and formation gas. Nevertheless it is actually injected into the earth — the well casing being situated therein — and is so regarded by the statute’s provisions. The method of gas-lifting employed by plaintiff, according to the agreed statement of facts, is the only,one in use in the oil industry whereby gas is injected below the surface of the earth for the express purpose of lifting oil. It must be presumed that the Legislature knew this and also knew that in the process of lifting oil the gas does not go into the formations of the earth but is merely injected into the well casing.
 

 But what is the significance and meaning of the proviso of paragraph (d), reading: “Provided this exemption shall not apply to gas severed in ‘lifting oil’ ” ? Counsel for the Collector in discussing it in his brief says that it means “that if, after the operation of ‘lifting oil’ is completed, the gas is not returned to the earth, but remains severed instead, then the tax should be paid, because the State would have no further opportunity to collect the tax on a later severance. If, however, it is returned to the earth as it is in storage, recycling and repressuring, then no tax is due. Certainly there was no occasion for the Legislature to permit gas to be taken from the earth finally in lifting oil without payment of the tax when it had not permitted this under the other three operations.”
 

 From a casual reading of that proviso, one gets the impression that the word “severed” is used therein in the sense of separating the gas and placing it in the channels of commerce, on the occurrence of which it is not exempted from the tax. However, an explanation of the word “severed” is given in Section 2A of the 1940 Act, it being: “The term ‘severed’ as used in this Act shall mean the point at which the natural resources are severed from' the surface of the earth or water.” In view of that explanation, and without giving effect to 'any other legislation, it would seem
 
 *243
 
 that the Collector’s counsel has correctly construed the proviso in question.
 

 But by Act No. 284 of 1942 the Legislature, with respect to gas, amended and reenacted the severance tax law so, as to read:
 

 “On gas, three-tenths of one cent (3/ 10ths of 1c) per thousand cubic feet, measured at ten ounce (10 oz.) pressure. In determining the quantity of gas for the purpose of such tax and in the calculation of such tax, there shall be excluded:
 
 Gas injected into the earth
 
 in the State of Louisiana; provided that the tax levied by this act shall apply on the
 
 ultimate severance
 
 of such gas,
 
 except as hereinafter provided.
 

 "In determining the quantity of gas for the purpose of such tax and in the calculation of such tax, there shall also be excluded gas produced from oil wells and flared or vented directly into the atmosphere; provided further, that the purpose of this specific exclusion is to clarify the provisions and intent of Act 24 of the Second Extraordinary Session of 1935, as amended, and is not to be taken or construed as meaning that prior to this specific exclusion a tax toas levied on gas produced from oil wells and vented or flared directly into the atmosphere.”
 
 (Italics ours.)
 

 Important to notice first is the last sentence of the quoted provisions of the 1942 Act. Therein it is said that the purpose of the preceding specific exclusion, meaning the exemption from the tax of gas produced from oil wells and flared or vented directly into the atmosphere, is to clarify the provisions and intent of Act No. 24,.' Second Extra Session of 1935, as amended. The Legislature, by that statement, expressed its intention with reference to the severance tax law as it previously existed, especially Act 145 of 1940, discussed supra.
 

 Therefore, if we find to be exempt from the tax the gas used by plaintiff in lifting oil and flared after the effective-date of the 1942 statute, the gas so used' prior to that date is likewise exempt. This view is also held by defendant, for in the brief of his counsel it is said with reference to the mentioned sentence: “The Department of Revenue has construed this provision to be retroactive in its effect and,, therefore, that gas produced from oil wells and flared or vented directly into the atmosphere is exempt from the severance tax, even though it was produced prior to-the amendment. If this interpretation is correct then, of course, the provision should be considered applicable to the gas here involved which was’ produced prior to the 1942 amendment. In this case the State’s, argument on the point under the 1942 act should be applied.”
 

 Intended to be affected by the 1942 Act, obviously, is gas used in lifting oil, although such process is not specifically named therein. In the first paragraph of the provision relating to gas it is stated that the tax shall not apply to “gas injected into the earth in the State of Louisiana.” As above pointed out the Legislature considers that gas used for oil lifting purposes is gas injected into the earth; in the 1940-Act it said that gas will be excluded from
 
 *245
 
 the tax when injected into the earth for the purpose of lifting oil.
 

 Continuing, the 1942 statute recites: ■“provided that the tax levied by this Act shall apply on the
 
 ultimate severance
 
 of such gas,
 
 except as hereinafter
 
 provided." The word “severed” as ordinarily used in the Act contemplates, as before shown, the point at which the natural resources are severed from the surface of the earth or water. But in the proviso just quoted the word “severance” is preceded by the word “ultimate”, indicating, in our opinion, that allowance was being made for the injecting •of gas into the earth, after its' initial production, and' for its later severance. In other words there is meant by the phrase “ultimate severance” the point at which the gas is finally taken from the earth or water and not reinjected.
 

 It is on the ultimate severance of the gas that the tax levied shall apply, says the statute, “except as hereinafter provided.” This exception refers to and is followed by the statement: “In determining the quantity of gas for the purpose of such tax and in- the calculation of such tax, there shall also be excluded gas produced from oil wells and flared or vented directly into the atmosphere * *
 

 Now the question arises : Is the gas that forms the basis of this controversy (1) produced from oil wells and (2) flared directly into the atmosphere? Defense counsel insists that neither of these requirements for exemption is satisfied. As to the first he says that, according to the agreed statement of facts, some of the gas involved is produced initially from gas wells. With reference to the second he argues, to quote from his brief, that: “But the taxpayer’s operations make. it even clearer that it does not come within the exemption, because the gas here is not only piped to another location, with a lapse of time intervening, before it is flared, but during the interim it is utilized by the producer. By no reasonable construction can this be considered flaring it directly into the atmosphere. To say that a producer can produce gas, pipe it to another section of the State, wait an indefinite time, then be permitted to flare it tax free, would be an illegal, unreasonable, and unconstitutional interpretation of the act. And this is exactly what the taxpayer is asking this Honorable Court to approve.”
 

 When gas is to be used for oil lifting purposes of necessity it must be transported in, by and through a pipeline from the flowing well to the oil well in which the process is to be undertaken. In this case we are not concerned with the piping of gas a great distance, or from one section of the state to another, with an appreciable period of time intervening; here plaintiff merely produces gas from certain of its wells and uses it immediately in a nearby oil well. As the gas enters the transporting line there does occur a severance, but not the ultimate severance or point at which the question of taxability is determined under the statute. On being injected into the well casing (into the earth) the gas becomes commingled with the oil and
 
 the
 
 formation gas, thus losing its identity as injected gas, after which all of those substances are produced in solution and run through the
 
 *247
 
 separator. When separated from the oil, there is no way of distinguishing injected gas from formation gás; and a determination of the quantity of formation gas produced is possible only because of a previous measurement of the gas injected. If after the separation the gas is returned to the earth, for gas lifting purposes or otherwise, its ultimate severance has not been effected. If, on the other hand, it is either placed in commerce or directly flared into the atmosphere (burned), there results its ultimate severance, the point for determining the question of taxability.
 

 The gas thus injected into the earth for oil lifting purposes and which comes to the surface of the ground in solution with the oil and formation gas, is, in our opinion, gas produced from an oil well within the meaning and intendment of the 1942 Act. And if severed (not reinjected into the earth), that which is put into commerce or utilized is taxable; that flared or vented directly into the atmosphere at such well is not subject to the tax.
 

 Unquestionably, the flaring or venting of gas into the atmosphere constitutes a waste of the state’s natural resources. But this case presents no issue respecting the prevention of such waste; it deals solely with the levying of the severance tax. Moreover, the conserving of the state’s natural resources is a matter primarily for the consideration and action of the Legislature and the Department'of Conservation, not the judiciary.
 

 For the reasons assigned the judgment is affirmed.