273 So.2d 353 (1973)
E. Lee AGERTON, Collector of Revenue, Plaintiff and Appellant,
v.
CITY OF LAKE CHARLES et al., Defendants and Appellees.
No. 4074.
Court of Appeal of Louisiana, Third Circuit.
January 29, 1973.
Rehearing Denied March 7, 1973.
Writ Refused April 19, 1973.
*354 Litton & Abadie by James F. Abadie, and Robert L. Royer, Baton Rouge, for plaintiff and appellant.
McHale & Bufkin by Louis D. Bufkin, Lake Charles, and John A. Stassi, II, New Orleans, for defendants and appellees.
Before SAVOY, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a "Rule for Taxes" by summary proceeding under LSA-R.S. 47:1574. The Collector of Revenue contends defendants owe severance taxes in the sum of $162,441.36 plus interest, penalties and attorney's fees, on 3,605,654 tons of sand dredged from the bottom of Lake Charles and used as fill material in the reclamation of another portion of the lake, during the period from December 1, 1967 through December 31, 1968. From a judgment on the merits rejecting his demands, plaintiff appealed.
The substantial issues argued on appeal are: (1) Was the dredged material sand, and if so, how much? (2) Is the plaintiff Collector of Revenue estopped to collect a tax by the ruling of his predecessor in office that no such tax was due? (3) Under the particular constitutional provisions applicable here, is a severance tax due?
We pretermit the first and second issues stated and affirm the judgment appealed on the basis of the third.
Pursuant to Act 550 of 1950, LSA-La. Const. Art. 14, Section 39(a), was amended to permit the city of Lake Charles to reclaim and develop a portion of the bed of Lake Charles, adjacent to the downtown section of the city. The amendment authorized additional powers to the Commission Council of the city of Lake Charles in pertinent part as follows:
"Said Council shall have full and exclusive right, jurisdiction, power and authority for non-commercial and non-profit purposes to locate, relocate, construct, maintain, extend, and improve embankments, seawalls, jetties, breadwaters, water-basings and other works in relation to this project, and to conduct all dredging operations necessary in connection therewith and/or incidental thereto, along, over and on the shores, bottom and bed of Lake Charles, in the Parish of Calcasieu," (Then follows a detailed description of the portion of the lake bed to be reclaimed and a transfer of title of the reclaimed area from the State of Louisiana to the city of Lake Charles.)
In June of 1966, the city authorized a study by McClelland Engineers, Inc., soil and foundation consultants, to investigate soil conditions beneath the lake bottom and locate suitable borrow for use as fill in the reclamation project. These engineers conducted borings and found a suitable deposit of Pleistocene sand at depths ranging from 30 feet to 76 feet below water surface in the lake bed and only a short distance from the proposed reclamation project. Accordingly, detailed plans were furnished by the engineers to the city in December of 1966 for dredging the sand, pumping it to the reclamation project, constructing a retaining wall and other soil and foundation information for the proposed buildings.
The city obtained a grant of $1,400,000 from the Department of Housing and Urban Development of the Federal Government to pay certain items of the reclamation *355 and development project. Other funds were to be furnished by the city. In making its plans for finances, the city considered two possible liabilities to the state with regard to the dredged sand: (1) Any royalty due on sand removed from the bed of the lake which the State owned and (2) any severance tax due on the sand.
Regarding the royalty, the city contacted the Department of Wildlife & Fisheries of the State of Louisiana, the agency charged with the collection of royalty on any material excavated from the bottoms of navigable lakes, streams, etc. That Commission ruled that no royalty would be due to the State, since the sand was only going to be moved from one location to another in the lake bed and was not going to be removed from the lake.
The city contacted the then Collector of Revenue of the State of Louisiana, Mr. Ashton Mouton, regarding the severance tax. Mr. Mouton ruled that no severance tax would be due on the sand, since it would not be severed from the lake but would only be moved from one location to another on the lack bed.
Relying on this ruling by the then Collector of Revenue, the city deleted any request for federal funds to pay severance taxes. Furthermore, the city inserted the following provision in its contract with the defendant, T. L. James & Company, Inc., to perform the dredging and fill work.
"The contractor will not be required to pay any severance tax ... that may be due the State of Louisiana or its agency on the material obtained from the borrow pit."
The actual pumping commenced in December of 1967. First, an unsuitable layer of clay, decayed vegetation and other "muck" was removed from the top of the sand deposit and pumped into an old borrow pit in another part of the lake. Next, a layer of unsuitable "muck" was removed from the reclamation project site. After these stripping operations, the work of pumping the fill material from the borrow pit to the construction site commenced in January of 1968 and ended in April or May of 1968.
The pertinent constitutional and statutory provisions regarding severance taxes are as follows:
LSA-La.Const. Art. 10, Sec. 21 states in part:
"Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance;..."
LSA-R.S. 47:631 provides for taxes upon all natural resources "severed" from the soil or water, including "sand". Section 632 of the Act states that "These taxes shall be paid by the owner ... at the time of the severance." Section 634 defines "owner" as the "owner at the time of severance", and defines "severed" as "the point at which the natural resources are severed from the surface of the earth or water."
Next, Section 635 of the Act requires monthly reports by persons who actually sever any natural resources from the soil or water, these reports to be on forms furnished by the Department of Revenue, giving the names of the owners at the time of severance and the place of severance. Section 635 also requires the severer to "collect or withhold out of the value of the products severed, the proportionate parts of the total tax due by the respective owners of the natural resources at the time of severance."
We conclude that the 1950 amendment to LSA-La.Const. Article 14, Section 39(a), which authorized this reclamation of a portion of the lake bed by the city of Lake Charles and "all dredging operations necessary in connection therewith and/or incidental thereto, along, over and *356 on the shores, bottom and bed of Lake Charles" is subject to the construction that there was no severance of the sand for which a severance tax is due. Clearly, the intent and purpose of the constitutional amendment was to allow the city of Lake Charles to reclaim and develop a portion of the lake bed adjacent to the downtown section for civic uses. The record shows the reclaimed land was actually used for the construction of an auditorium, park, parking facilities and other public purposes. It would be inconsistent with the intent and purpose of these constitutional provisions to hold that the city is liable for a severance tax on this sand which it was authorized to dredge from one place to another in the lake bed.
The plaintiff makes a persuasive argument that the constitutional provisions only authorized the dredging of the sand and did not waive the severance tax. Nevertheless, we find these provisions are reasonably subject to the construction that the city owes no severance tax to the state.
We find additional support for our conclusion in the 1968 amendments to the Constitution. The last severance of sand occurred in May of 1968. Acts 703, 704 and 705 of 1968 proposed constitutional amendments relating to the Lake Charles Civic Center property. These amendments to Article 14 are found in sections 44.1, 39 and 44 and were adopted in November of 1968. Their overall effect was to vest and release title to the severed sand to the City of Lake Charles free from the present claim for severance taxes.
The 1968 amendment to Article 14, § 39 provides at section (d):
"To enable said Council to perform the work herein provided for and to assist in defraying the cost and expenses thereof... the State of Louisiana hereby grants and releases to said Council the title of the State in and to all public property necessary for the purposes hereof and all lands reclaimed or filled in within any levee embankments...."
Applicable here is the rule that when the meaning of a statute is in doubt, the interpretation by those charged with its enforcement will be given substantial weight in the courts, Esso Standard Oil Company v. Crescent River Port Pilots Association, 235 La. 937, 106 So.2d 316 (1958). Mr. Mouton, who was the collector of revenue of the State of Louisiana, charged with the duty of collecting these taxes, ruled that there was no severance for the reason that the sand was simply moved from one place to another in the lake bed. The Department of Wildlife & Fisheries of the State of Louisiana, which is the agency charged with the collection of royalty on any material excavated from the bottoms of navigable lakes, streams, etc., reached the same conclusion. These constructions of the constitutional and statutory provisions are reasonable and are entitled to substantial weight in the courts.
Furthermore, a well established rule of statutory construction is that tax laws are interpreted liberally in favor of the taxpayer and all doubts or ambiguities are construed against the State, State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601; Danna v. Commissioner of Insurance, 228 So.2d 708 (1st Cir. 1969).
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.