DOMENGEAUX, Judge.
This is a “Rule for Taxes” by summary proceeding under LSA-R.S. 47:1574. The Collector of Revenue contends that the defendants owe severance taxes in the sum of $133,660.62, plus interest, penalties, and attorney’s fees on 2,794,972 tons of sand *905 which was removed from property abutting the Lafayette Regional Airport and- relocated to another portion of the same property, during the period from March 1, 1970, through July 31, 1973. Defendants filed motions for summary judgment contending no “severance” took place and hence no tax was due. After a hearing thereon, judgment was granted in favor of the defendants, sustaining their motions for summary judgment and dismissing plaintiffs suit. From said judgment plaintiff has appealed.
The facts leading up to this suit are as follows: The Parish of Lafayette, through its governing body — the Lafayette Parish Police Jury, is the owner of property forming the Lafayette Airport. The administration of said airport is delegated to the Lafayette Airport Commission, which determined, some time prior to January 12, 1970, to make certain improvements to the airport. These improvements included extending the East-West runway and construction of a new North-South runway.
This project was chosen to he completed in two phases. Accordingly, on January 12, 1970, the Airport Commission entered into a contract with Louisiana Paving Company, Inc., of Baton Rouge, Louisiana (a defendant herein), for the construction of Phase I of said project. Phase I included the clearing of the soil and land in a low area to the east of the existing runway and the filling of said area, thereby raising the elevation to a usable level in order that the runway extension could be paved. A fill material suitable for this purpose was fortunately found on the property owned by the parish which was contiguous to the airport. As a result the fill material was removed from the surface and underlying areas (in addition to some previous borrow operation locations) and moved by hydraulic dredging, i. e. transporting it through flexible pipe to the end of the runway, some 1,000 to 4,000 feet. In the performance of its contract Louisiana Paving moved some 1,331,772 tons of sand and gravel from one portion of the property to another.
Phase II, on the other hand, consisted of raising the elevation of the land in a certain area to make it possible to construct a new North-South runway. J. B. Talley & Company, Inc., of St. Martinville, Louisiana (also a defendant herein), was the contractor for this phase of the project, said contract entered into on August 14, 1972. During the performance thereof, and in the same manner mentioned in Phase I above, the contractor moved or relocated approximately 1,463,200 tons of sand, some 3,000 to 9,000 feet.
Subsequently the State of Louisiana, through the Department of Revenue, demanded severance taxes in the aforementioned amount. When payment thereof was refused plaintiff instituted this proceeding against the Lafayette Airport Commission, the Parish of Lafayette, the Police Jury of Lafayette Parish, the City of Lafayette, J. B. Talley & Company, Inc., and Louisiana Paving Company, Inc., alleging in solido liability for the taxes. The City of Lafayette subsequently filed an exception of no cause and no right of action, contending it was not the owner of the property from or over which the fill material was taken. Said exception was subsequently maintained, thereby dismissing the City of Lafayette from this suit. As aforementioned, all of the remaining defendants filed motions for summary judgment which were sustained.
The following issues are presented on appeal: (1) Whether there can he a tax imposition upon the Parish of Lafayette (through its Police Jury and/or Airport Commission) in view of Article X, Section 4 of the Louisiana Constitution of 1921, which specifically exempts all public property from taxation ? (2) Whether the material in question was “severed” within the meaning of Article X, Section 21 of the Louisiana Constitution of 1921 (as implemented by LSA-R.S. 47:631 et seq.), and as a result severance taxes are due?
*906 IS THE PARISH OF LAFAYETTE EXEMPT FROM THE SEVERANCE TAX?
It is contended that Article X, Section 4 of the Louisiana Constitution of 1921 exempts the public bodies herein from the payment of severance taxes, due to the fact that this is a taxation of public property.
This question has effectively been litigated a number of times in both state and federal courts, wherein it has been held that severance tax is not a property tax, but an excise tax, upon the privilege of severing, and therefore the authority for levying same is not controlled or prevented by Article X, Section 4 of the Louisiana Constitution. Gulf Refining Company of Louisiana v. McFarland, 154 La. 251, 97 So. 433 (1923), affirmed 265 U.S. 573, 44 S.Ct. 402, 68 L.Ed. 856; Bel Oil Corporation v. Roland, 242 La. 498, 137 So.2d 308 (1962), appeal dismissed 371 U.S. 2, 83 S.Ct. 22, 9 L.Ed.2d 48; Mississippi River Fuel Corporation v. Fontenot, 234 F.2d 898 (5th Cir. 1956); “Severance Tax Regulation of Timber Pulpwood and Minerals Other Than Gas and Oil”, effective March 31, 1968, and October 1, 1970, infra; See also State v. City of Monroe, 177 La. 983, 149 So. 541 (1933).
Accordingly, we conclude that no exemption exists herein.
' WAS THERE A SEVERANCE?
Article X, Section 21 of the Louisiana Constitution of 1921 provides that: “Taxes may be levied on natural resources severed from the soil or water . . . No further or additional tax or license shall be levied or imposed upon oil, gas, or sulphur
Pursuant to this provision the Louisiana Legislature enacted LSA-R.S. 47:631 et seq. which in pertinent part reads as follows :
“Taxes as authorized by Section 21 of Article X of the Constitution of Louisiana, are hereby levied on all natural resources severed from the soil or water, including . . . sand . . .” (LSA-R.S. 47:631)
“These taxes shall be paid by the owner or proportionately by the owner thereof at the time of severance . . .” (LSA-R.S. 47:632)
“The taxes on natural resources severed from the soil or water levied by R.S. 47:631 shall be predicated on the quantity or value of the products or resources severed and shall be paid at the following rates . . . (18) On sand, three cents per ton of two thousand pounds.” (LSA-R.S. 47:633)
“The following terms as used in this Part shall have the following meanings ascribed to them:
(1) ‘Owner’ means owner at the time of severance.

(3)‘Severed’ means the point at which natural resources are severed from the surface of the earth or water.” (LSA-R.S. 47:634)
LSA-R.S. 47:1511 further provides that the Collector of Revenue is authorized to make rules and regulations for the proper administration and enforcement of the foregoing provisions and that such rules and regulations would have the full force and effect of law. Pursuant to said authority regulations entitled “Severance Tax Regulation of Timber, Pulpwood and Minerals Other Than Gas and Oil” were promulgated as effective on March 31, 1968, and October 1, 1970. In both regulations, which covered the period of time in question herein, we find the following:
“1. IN GENERAL
The 'severance tax’ imposed by R.S. 47:631 is an excise tax upon the privi *907 lege of severing any natural resources from the soil or water. All resources found in a natural state which are of any commercial value whatsoever are natural resources and are subject to the severance tax.
‘Severance means the separation of the natural resource from the soil or water, or its removal from its natural position. For example, the dredging of sand from a river, the cutting of timber, the mining or removal of a mineral from its natural location. Severance does not refer to the refinement of a natural resource after its removal.
'Severer’ means any person engaged in the operation of severing natural resources from the soil or water, whether it be the owner of the soil or water, or other person severing from the soil or water of another, or the owner of a natural resource severing from the soil or water of another.
The tax: is due by the severer, whether the natural resource is used by him or sold to another. If it is used by the severer the tax is due by the severer. If it is sold, the tax is due by the severer, or by the purchaser, if for any reason it is not paid by the severer. If the natural resource is sold to the State or to the Federal Government the tax is still due, because the liability for the tax falls primarily on the severer and not on the purchaser. The tax is due on all natural resources removed from the State after severance, and must be paid to the State of Louisiana. There is no provision of the law to exempt the parish, municipality, nor any board or agency of the State of Louisiana from the payment of this tax. A town, parish or other political subdivision of the State which engages in severing gravel, sand or other natural resource with its own, or leased or otherwise acquired, equipment must pay the severance tax. Among the resources included are all forms of timber, pulpwood, and minerals such as sulphur, salt, coal, lignite and ores; also marble, stone, gravel, sand, shells and other natural deposits; and the salt content in brine.”
As plaintiff alleges, there is no doubt but that under the foregoing definition of “severance” (found in the March, 1968, and October, 1970, regulations), standing alone, the activity taking place in the present case would constitute a severance. There was in fact a “separation” (although temporary) of the sand or gravel herein “from the soil”. Likewise, it was “removed from its natural position”, by a dredging type operation, as set forth in an example given above. Plaintiff further contends that if the sand had not been available the Parish would have had to purchase same, paying the severance tax in the form of increased costs, and that said sand was used in the construction of permanent improvements to the airport. Likewise it is contended that if the sand was not needed for said improvements, its removal from its natural location would not have been necessary.
Defendants, however, allege that under definitions of the source term “sever” [1] the word “severance” contemplates a permanent removal of the natural resource from the earth (or water) and its introduction into the stream of commerce, rather than a temporary parting or shifting of the object severed. Accordingly, it is argued that severance for tax purposes does not include the mere relocation of material from one portion of a man’s property to another, for if such was the case the tax would be *908 repeatedly imposed each time the natural resource was moved within the same tract. An analogy is drawn to the gas tax provision found in LSA-R.S. 47:633-(9) which provides that gas severed and then rein-jected for lifting oil is not then taxed, since the natural resource is returned to the ground, and is taxed only at its ultimate severance. Defendants draw a further analogy to the alleged fact that severance taxes are not levied upon a dredging operation where sand is merely pumped to another portion of a river bottom or onto the bank adjacent to the water body. Additionally, it is argued that the purpose of the tax is to compensate the State for the depletion of the natural resources and that in the case herein no such depletion took place because the sand is still in its natural state and severance tax can be collected when and if it is removed at a later date and put into commerce. Arguably the sand and gravel have never been converted to privately owned property and still can be considered part of the public domain subject to capture and ownership.
In the trial judge’s “Reasons for Judgment” he opined, in effect, that defendants’ connotations attributed to the word “severed” more closely reflected the acts which the legislature intended to fall within the coverage of the statutes. He further pointed out the analogy with the aforementioned reinjection cases [2] and indicated that the usual decisions in which the tax was sustained “have consistently involved a permanent separation, and actual permanent depletion of the resource in relation to the tract of land from which it was taken.” He also noted that such an approach is in keeping with the nature of the tax as a conservation measure.[3]
The trial judge also cited and discussed the case of Agerton v. City of Lake Charles, 273 So.2d 353 (La.App. 3rd Cir. 1973), writ refused 275 So.2d 870 (1973), which involved the dredging of sand from one portion of a lake bed to be used in another portion of the same bed in the city’s reclamation project. As indicated by the trial judge, although the reasoning of the court in Agerton was not applicable to the facts herein,[4] there was no specific statutory exception to the severance tax being applied in that case, yet the court held that the city was not liable therefor.
The trial judge concluded:
“In view of these considerations, this court holds that, under the facts of the instant case, where material has been moved or removed, in effect, relocated, from one portion to another portion of the same tract, and remains part of that tract, there has been no severance within *909 the meaning of LSA-R.S. 47:631 and the taxes accordingly disallowed.”
Under the particular facts presented herein we agree with the reasoning set out by the able trial judge and his conclusions regarding same.
Furthermore, a well established rule of statutory construction is that tax laws are interpreted liberally in favor of the taxpayer and all doubts or ambiguities are construed against the State. State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601 (1937); Danna v. Commissioner of Insurance, 228 So.2d 708 (La.App. 1st Cir. 1969); Agerton v. City of Lake Charles, supra.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant’s costs, subject to the limitations of LSA-R.S. 13:4521.
Affirmed.
WATSON, J., dissents and assigns written reasons.

. Defendants cited the definition of “sever” as found in Black’s Law Dictionary and Webster’s New Collegiate Dictionary (1973) : From Black’s: “To separate, as one from another; to cut off from something; to divide; to part in any way, especially by violence as by cutting, rending, etc.; --as to sever the head from the body; to out or break open or apart; to divide into parts; to cut through; disjoin; as, to sever the arm or leg.” From AVebster’s: “To put or keep apart: divide; esp.: to remove (as a part) by or as if by cutting; to become separated.”

. In Shell Oil Co. v. Fontenot, 208 La. 234, 23 So.2d 57 (1945) the Court interpreted Act 284 of 1942 (which amended the severance tax law) in relation to gas used for oil lifting purposes and found that such gas, when returned to the earth, has not been ultimately severed, and that only upon being placed in commerce or directly flared into the atmosphere has such ultimate severance taken place, i. e. the point for determining the question of taxability. See also Humble Oil and Refining Co. v. Traigle, 271 So.2d 677 (La.App.1st Cir. 1972).

. On the suggestion that severance taxes were enacted for preservation and conservation purposes, see The Growth of Severance, Taxation in Louisiana and Its Relation to the Oil and Gas Industry, 17 Tul.L.Rev., 602 (1943) ; Hussey, John B., Conservation of Irreplaceable Natural Resources, 18 La.L.Rev. 671 (1958). .

.The holding in Agerton was apparently based upon the presence of a constitutional amendment authorizing the reclamation project and vesting title of the sand in the city, which intent this Court held would be inconsistent with holding the city liable for severance taxes. Notably, however, the amendment did not exempt the city or waive severance taxes. The Court also indicated in Agerton that Rulings by the former Collector of Revenue and Department of Wildlife and Fisheries to the effect that there was no “severance" of sand by the City when sand was simply moved from one place to another in the lake bed, were reasonable, and thus entitled to substantial weight in court, when the Collector 'of Revenue sought to recover severance taxes.